IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK05-85930 |
| | ) | |
| WESTERN IOWA LIMESTONE, INC., | ) | |
| | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | Filing No. 391, 398 |

## ORDER

Hearing was held in Omaha, Nebraska, on July 5, 2006, regarding Filing No. 391, Motion to Alter or Amend Judgment or Motion for New Trial, filed by Independent Inputs, Paul Leinen and Leinen, Inc., and Filing No. 398, Objection, filed by United Bank of Iowa. Alan Pedersen appeared for Western Iowa Limestone, Inc.; Kirk E. Goettsch appeared for Independent Inputs, Paul Leinen and Leinen, Inc.; and Michael Eversden and James J. Niemeier appeared for United Bank of Iowa.

Western Iowa Limestone, Inc., operated one or more rock quarries. At the Logan, Iowa, quarry, part of the inventory included a rock pile which, when processed, could be used as agricultural lime.

Prior to filing the bankruptcy petition, the debtor contracted with several entities which were to become dealers retailing the lime. Three of the dealers – Independent Inputs, Paul Leinen, and Leinen, Inc. – entered into written contracts with the debtor for a specified number of tons of the limestone. They paid in full for the amount purchased and the agreements allowed the purchasers to leave the product on the premises of Western Iowa Limestone, Inc., until needed. Such a provision saved each of the dealers transportation costs to their own location and then additional transportation costs once the product was sold and delivered to the ultimate buyer.

Each of the named dealers removed some of their purchased product from the premises of Western Iowa Limestone, Inc., prior to it filing a Chapter 11 bankruptcy case. In the bankruptcy case, the debtor proposed a sale of all its assets. Independent Inputs, Paul Leinen and Leinen, Inc., objected to the sale because it included what they considered to be their property, the remaining limestone.

United Bank of Iowa is the debtor's largest secured creditor and it claims a security interest in all of the assets of the debtor, including the pile of limestone claimed by the dealers. The court approved the sale of all of the assets and held a hearing on the issue of the priority of the lien of the bank versus the ownership claim of the dealers. An order was entered at Filing No. 387 finding in favor of the lien priority of the bank and authorizing distribution of the sale proceeds. The dealers have filed a motion to alter or amend the judgment or a motion for a new trial, pointing out that the court had ruled in their favor on every element of the legal issue, except the element of possession. Had the court found that the dealers had constructive possession of the product, even though it was in the custody of Western Iowa Limestone, Inc., and on its premises, the dealers would have been considered a "buyer in the ordinary course" under the Iowa version of the Uniform Commercial Code and their interest as such would have trumped the lien claim of the bank.

Another hearing was held and briefs were submitted. In addition, because the bank argued at the second hearing that the dealers were raising a new issue with regard to the argument

concerning constructive possession, the dealers were allowed to submit a transcript of the first hearing.

After reviewing the transcript of the first hearing and the cases presented by the parties, and considering the arguments, I grant the motion to alter or amend the judgment.

The dealers did raise the issue and argue constructive possession at the first hearing. The transcript, at 19:2 and 6, specifically mentions constructive possession. The Iowa Supreme Court recognized the concept of constructive possession in First Nat'l Bank in Lenox v. Lamoni Livestock Sales Co., 417 N.W.2d 443 (Iowa 1987). Quoting a Minnesota Supreme Court decision, the Iowa court explained that "constructive possession of personal property by its owner exists where the owner has intentionally given the actual possession – namely, the direct physical control – of the property to another" for the purpose of having the other do some act for the owner. Where the owner retains constructive possession, the party to whom physical control of the property had been entrusted for the owner's purpose has only custody, not possession. Id. at 447-48 (quoting Jacobson v. Aetna Cas. & Sur. Co., 46 N.W.2d 869, 871 (1951)). The concept was also recognized by the Wisconsin Supreme Court in Chrysler Corp. v. Adamatic, Inc., 208 N.W.2d 97, 107 (Wis. 1973), *overruled on other grounds by* Daniel v. Bank of Hayward, 425 N.W.2d 416 (Wis. 1988). Finally, the bankruptcy court for the Western District of Missouri recently discussed the concept in the case of Havens Steel Co. v. Commerce Bank, N.A. (In re Havens Steel Co.), 317 B.R. 75 (Bankr. W.D. Mo. 2004). In Havens, fabricated steel which had been manufactured for a specific purpose to be used in an identified building under construction in Kansas City, Missouri, was determined to be in the constructive possession of the entity that had contracted for its manufacture and had paid for it, even though the steel was on the premises of the debtor on the petition date. The purchaser was deemed to be a buyer in the ordinary course under the Missouri and Kansas versions of the Uniform Commercial Code and the ownership interest coupled with the concept of constructive possession permitted the purchaser's interest to take priority over the security interest of the bank which was the lender for the debtor.

In the original order, Filing No. 387, I found that the dealers had entered into specific agreements for the purchase of specific product for a particular price. They paid the full purchase price for all of the product included in the contracts. The contracts provided that the product could remain on the premises of the seller until needed. The product, in a particular pile, was identified to the contract and title passed at the time of payment.

The Iowa Code defines "buyer in the ordinary course of business" as:

> a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. A person that sells oil, gas, or other minerals at the wellhead or minehead is a person in the business of selling goods of that kind. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a pre-existing contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under article 2 may be a buyer in ordinary course of business. . . .

Iowa Code Ann. § 554.1201(9).

      IT IS ORDERED: The motion to alter or amend judgment (Fil. #391) is granted. The dealers in this case meet all the requirements of a buyer in the ordinary course of business because they did take possession by virtue of the concept of "constructive possession." Therefore, their interest in the proceeds of the sale of the limestone has priority over the security interest of the bank. The dealers are buyers in the ordinary course.

      DATED this 26th day of September 2006.

      BY THE COURT:

      /s/ Timothy J. Mahoney
      Chief Judge

Notice given by the Court to:
    Alan Pedersen
    *Kirk E. Goettsch
    Michael Eversden
    James J. Niemier
    United States Trustee

*Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.